IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER DEE,

    Petitioner,

v.                                      Civ. No. 09-422 BB/RLP

JAMES JANECKA, Warden, *et al.*,

    Respondents.

MAGISTRATE JUDGE'S REPORT & RECOMMENDATION[1]

    1.    This is a proceeding brought pursuant to 28 U.S.C.§ 2254. After a jury trial, Petitioner was convicted of two counts of murder and felony murder and various other felonies and sentenced to a term of imprisonment of 58 years. Answer [Doc. 10], Exhibit A thereto. He appealed his conviction, Exhibits B-G, and the New Mexico Supreme Court affirmed his conviction. Exhibit H. He thereafter brought a collateral proceeding in state court, which was summarily denied. Exhibits J-K. He filed a petition for writ of certiorari, Exhibit L, which was also summarily denied. Exhibit M. The federal petition is timely and Respondents concede exhaustion. Answer, ¶ 9. Petitioner alleges several grounds for relief, which are discussed below.

    2.    The following facts are taken from Petitioner's brief on appeal. Exhibit E. Marcos Tavasci, an associate of Petitioner, had been jumped at a club and had his gold chain stolen. He and others, including Petitioner, formulated a plan to retrieve the gold

---

[1] Within ten (10) days after a party is served with a copy of the Magistrate Judge's Report and Recommendation that party may, pursuant to 28 U.S.C. § 636 (b)(1) , file written objections in the United States District Court to the Report and Recommendation. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Report and Recommendation. If no objections are filed, no appellate review will be allowed.

chain from Jonathan Lueras and Lorenzo Limon. On April 1, 2003, Limon and Lueras were lured to Pat Hurley Park by two women who were friends of Tavasci and the others. Tavasci, Petitioner, and two other men arrived at the park with a shotgun and a .9 millimeter handgun. Petitioner shot and killed Lueras at close range with the shotgun. He fired at Limon but missed. Limon was killed with the .9 millimeter by one of the other men in the group. The men took jewelry, including the gold chain, from the victims.

3. Petitioner was charged with, *inter alia*, two counts of first degree murder (willful and deliberate), NMSA § 30-2-1(A)(1) and, as alternative counts, first degree murder (felony murder), NMSA § 30-2-1(A) (2). Petitioner argues there was insufficient evidence to convict him of the murder of Lorenzo Limon.[2]

4. Federal courts may not grant habeas relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." § 2254(d). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law . . . ." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision represents an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

---

[2] Petitioner's claim in count 1 alleges prosecutorial misconduct and violation of various federal constitutional amendments but based on the facts alleged, the claim raised here -- and before the New Mexico Supreme Court -- was insufficiency of the evidence and so this Court does not address the other allegations.

5.      The "clearly established" federal law in this case is *Jackson v. Virginia*, 443 U.S. 307 (1979), which states that the determination of the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt?"  *Id.* at 318.

6.      The jury was instructed that to convict Petitioner of first degree murder (willful and deliberate) of Lorenzo Limon it must find beyond a reasonable doubt that:

> 1.  Christopher Dee killed Lorenzo Limon;
> 2.  The killing was with the deliberate inention to take away the life of Lorenzo Limon;
> 3.  This happened in New Mexico on or about the 1st day of April, 2003.
>
> A deliberate intention refers to the state of mind of the defendant.  A deliberate intention may be inferred from all of the facts and circumstances of the killing.  The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action.  A calculated judgment and decision may be arrived at in a short period of time.  A mere unconsidered and rash impulse, even though it includes an intent to kill is not a deliberate intention to kill.  To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

Exhibit F at 20-21 (quoting Record Proper at 253).

7.      The jury was also instructed, in the alternative, that to convict Defendant of first degree felony murder, the jury had to find beyond a reasonable doubt that:

> 1.  The defendant, Christopher Dee, committed the crime of Armed Robbery, under circumstances or in a manner dangerous to human life.
>
> 2.  Christopher Dee caused the death of Lorenzo Limon during the commission of Armed Robbery.

      3.    Christopher Dee intended to kill or knew that his acts created a strong probability of death or great bodily harm;

      4.    This happened in New Mexico on or about the 1st day of April 2003.

*Id.* at 21(quoting Record Proper at 255.)

    8.    The jury was also instructed that under accomplice liability, the Defendant could be found guilty of felony murder, even though he did not commit the murder, if the jury found beyond a reasonable doubt:

      1.    The felony of Armed Robbery was committed, under circumstances or in a manner dangerous to human life;

      2.    The defendant Christopher A. Dee helped, encouraged or caused the felony of Armed Robbery to be committed;

      3.    The defendant Christopher A. Dee intended that the Armed Robbery be committed;

      4.    During the commission of the felony Lorenzo Limon was killed;

      5.    The defendant Christopher A. Dee helped, encouraged or caused the killings to be committed;

      6.    The defendant Christopher A. Dee intended the killings to occur or knew that he was helping to create a strong probability of death or great bodily harm;

      7.    This happened in New Mexico on or about the 1st day of April 2003.

*Id.* at 21-22 (quoting Record Proper at 256).

    9.    Before the New Mexico Supreme Court, Petitioner argued that "because he intended to rob only Mr. Lueras, he could not have been convicted of the felony murder of Mr. Limon. Furthermore, because both victims were shot almost simultaneously, Defendant claims that he could not have had the intent to shoot Mr. Limon, and thus he

4

could only be found guilty of a single count of intentional murder." <u>Decision</u>, Exhibit H at 9. In this Court, Petitioner argues that the only ground for accomplice liability was that he was found to be in possession of one of the victim's gold rings. <u>Petition</u> [Doc. 1] at 7.

9.  As the foregoing jury instructions show, and the New Mexico Supreme Court found, accomplice liability is predicated on a defendant's help or encouragement of the killing; his intent to commit the underlying felony; and his intent that the killing occur or his knowledge that he was creating a strong probability of death or great bodily harm. <u>Decision</u> at 9.

10. The New Mexico Supreme Court found, as does this Court, that the evidence was sufficient. Petitioner was an active participant in the ambush of the two victims, he brought a shotgun to the affray, he knew the purpose of the encounter was to rob one of the individuals of a gold chain, and he knew that another participant had a handgun. "Defendant's involvement in the planning and execution of the robbery, including the decision to use guns in the robbery's commission, shows that he knew there was a strong probability that someone would be killed and that he aided or encouraged both killings." <u>Decision</u> at 10. This is in accordance with New Mexico law, *see State v. Nieto*, 12 P.3d 442, 451 (N.M. 2000) and is a proper application of *Jackson v. Virginia*, *supra*. Accordingly, Petitioner's claim of insufficient evidence to convict should be denied.

11. Petitioner next claims that he received constitutionally ineffective assistance of counsel. To establish this claim, Petitioner must show both that counsel's performance was constitutionally deficient and that deficient performance prejudiced the defense, depriving him of a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For counsel's performance to be constitutionally ineffective, it must have been

5

completely unreasonable, not merely wrong.  *See Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997).  To show prejudice, Petitioner must show that but for counsel's errors there is a reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 694.

12. As grounds for relief, Petitioner alleges that counsel should have not allowed Petitioner to be tried on two counts of murder and two counts of felony murder; that he should have investigated the threats of rescinding Marcos Tavasci's plea agreement to keep him from testifying for Petitioner.  Petitioner states that Tavasci would have provided an alibi for him and reconciled the conflicting testimony of other witnesses.   Petitioner further claims that counsel failed to impeach witnesses with their prior inconsistent statements.

13. As for the murder and felony murder charges, those issues were discussed in the preceding paragraphs.  It is unknown from Petitioner's allegations exactly what testimony Tavasci would have provided, but it is presumed that counsel's failure to call Tavasci might be considered sound trial strategy.  There is a presumption that counsel's performance is part of his or her trial strategy and Petitioner has not overcome that presumption with his recitation.  *Strickland*, 466 U.S. at 689.  As for the inconsistent statements, Petitioner does not give enough facts for the Court to determine whether he was prejudiced in any way from the conflicting statements.  Accordingly, Petitioner's claim of ineffective assistance of counsel should be denied.

14. Petitioner also claims constitutional violations due to trial court errors, judicial bias, and abuse of discretion.  These claims center around rulings the trial court made with regard to his speedy trial claims, the jury instructions, and the court's failure to admonish

the prosecutor for calling Petitioner a "liar" and a "bad man." Without more, I agree with the Respondents that these claims are matters of state law and not cognizable in this habeas proceeding.

## Recommended Disposition

I recommend that the petition for writ of habeas corpus be denied and this case be dismissed with prejudice.

_____
Richard L. Puglisi
United States Magistrate Judge